# COURT OF APPEALS OF VIRGINIA

---

**Record No. 1323-25-3**

---

MARC ALEXANDER OLIVER

v.

COMMONWEALTH OF VIRGINIA

---

Present: Judges Malveaux, Athey and Frucci

Opinion Issued June 30, 2026[*]

---

**FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY**
Christopher B. Russell, Judge

(M. Teresa Harris, Deputy Public Defender, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; William K. Hamilton, Senior Assistant Attorney General, on brief), for appellee.

---

**MEMORANDUM OPINION**
**PER CURIAM**

Marc Alexander Oliver ("Oliver") pleaded guilty in the Circuit Court of Rockbridge County ("trial court") to one count of possessing 200 grams or more of a mixture containing methamphetamine with intent to distribute, in violation of Code § 18.2-248(H)(4).[2]  As a result, the trial court sentenced him to 50 years' incarceration, with 26 years suspended.  On appeal, Oliver assigns error to the trial court's finding that he "did not qualify for the 'safety valve' provision" of Code § 18.2-248(H)(4) as well as the trial court's alleged failure to give "proper weight and

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Oliver was convicted for violating subsection Code § 18.2-248(H)(5), which has since been recodified as Code § 18.2-248(H)(4).  *See* 2025 Va. Acts chs. 394, 403.

consideration to the mitigating evidence" in fashioning his sentence. For the following reasons, we disagree and therefore affirm the trial court's judgment.[3]

## I. BACKGROUND[4]

Oliver was indicted on November 4, 2024, and subsequently pleaded guilty on April 14, 2025.[5] During the hearing on whether to accept his guilty plea, the Commonwealth proffered the following facts without objection.

For several months prior to January of 2024, Oliver delivered eight ounces of methamphetamine weekly to Jason Shiflett ("Shiflett"), who worked at a Comfort Inn in Raphine, Virginia. Shiflett would then sell the methamphetamine to other individuals. On January 2, 2024, a confidential informant ("informant") advised law enforcement that Oliver planned to travel to Roanoke "to purchase a large sum of methamphetamine" and further that the informant "could purchase a portion of that sum" from Oliver. The next day, law enforcement outfitted the informant with a wire and provided the informant $1,500 to purchase the methamphetamine.

At Oliver's request, the informant also picked up approximately $1,000 from Shiflett while Shiflett was working at the Comfort Inn in Raphine. The informant then met Oliver "in a Kroger

---

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[4] "On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)); *accord Cellucci v. Commonwealth*, 77 Va. App. 36, 42 n.1 (2023) (en banc).

[5] The record reflects that the trial court asked Oliver whether he was "guilty or not guilty," and Oliver replied, "Not guilty." Nevertheless, during the plea colloquy, Oliver agreed that he "decide[d] for [him]self to plead guilty," and at the end, the court found that he entered a plea of guilty "voluntarily and knowingly." The court later entered an order stating that Oliver "pleaded *guilty* to the charge," and no objections were ever raised regarding the accuracy of the order. *See Stamper v. Commonwealth*, 220 Va. 260, 280 (1979) ("In the absence of objection, we deem the order of the trial court to contain an accurate statement of what transpired.").

shopping center down towards Roanoke" and gave him the $2,500 he acquired from law enforcement and Shiflett. Oliver and the informant then separately drove to Roanoke, where Oliver picked up "approximately three pounds of methamphetamine from his contact in Roanoke." Oliver and the informant then met in the parking lot of a Burger King located in Roanoke whereupon Oliver requested that the informant transport the methamphetamine to Raphine in the informant's vehicle. The informant agreed, and both of them returned to Raphine in separate vehicles, with Oliver following closely behind the informant's vehicle.

When they arrived at the Comfort Inn, Oliver retook possession of the "three bags of methamphetamine" before leaving one of the bags with the informant. Law enforcement then approached Oliver and arrested him, seizing all three bags. Subsequent forensic testing confirmed that, in total, the three bags seized contained approximately 1,328.76 grams of a "crystalline substance" containing methamphetamine. Although Oliver "did not provide much information" during a custodial interview following his arrest, he stated that he was able to readily obtain methamphetamine in Roanoke by "asking people on the street," which was "how he obtained his contacts . . . in Roanoke."

Based upon the plea colloquy and the Commonwealth's proffer of the evidence, the trial court accepted Oliver's guilty plea and set the matter for a sentencing hearing to be held on July 21, 2025. On May 20, 2025, Oliver moved for "an in camera proceeding prior to sentencing" where he would be permitted to present evidence that he qualified for relief under the safety valve provision

of Code § 18.2-248(H), which would "negate the mandatory minimum sentence."[6] The trial court granted the motion.

During the in camera hearing, Oliver testified that he had been addicted to methamphetamine for ten years. He also stated that he had "a number of associates in Roanoke," one of whom led him to buy drugs from "Rob," who became Oliver's regular supplier. Oliver further testified that during his first meeting with Rob, he was supplied with a pound of methamphetamine with the expectation that he sell the drugs, despite Oliver only requesting and possessing the funds for half a pound of methamphetamine. Oliver stated that thereafter, he was indebted to Rob, and to pay off his debt, he reached out to contacts he had made through his meth addiction, who would "chip[] in." Oliver admitted that he continued to take delivery of methamphetamine from Rob and distribute the drugs to his contacts in Augusta and Rockbridge

---

[6] Under Code § 18.2-248(H)(4), a person who possesses 200 grams or more of a mixture containing methamphetamine is subject to a 20-year mandatory minimum sentence. The "safety valve" provision of Code § 18.2-248(H)(4) provides:

> Such mandatory minimum sentence shall not be applicable if the court finds that (i) the person does not have a prior conviction for an offense listed in subsection C of [Code] § 17.1-805; (ii) the person did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense or induce another participant in the offense to do so; (iii) the offense did not result in death or serious bodily injury to any person; (iv) the person was not an organizer, leader, manager, or supervisor of others in the offense, and was not engaged in a continuing criminal enterprise as defined in subsection I of this section; and (v) not later than the time of the sentencing hearing, the person has truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the person has no relevant or useful other information to provide or that the Commonwealth already is aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

- 4 -

Counties. Oliver asserted that he eventually paid off his debt to Rob in December of 2023 after he purchased three pounds of methamphetamine for the first time.

Oliver also admitted that on January 2, 2024, he reluctantly agreed to purchase a large amount of methamphetamine from Rob with the assistance of the confidential informant. He admitted to instructing the informant to pick up money from Shiflett in Raphine and rent a room for Oliver in the informant's name at the Comfort Inn. He also recalled purchasing the drugs from Rob, giving them to the informant to transport, and then taking two pounds and leaving one with the informant when they returned to the Comfort Inn.

Oliver testified that he did not have any previous felony convictions, was not part of a gang, did not possess a firearm or threaten anyone, and had never caused serious bodily injury to anybody as a result of his drug dealing. He explained that he had purchased three pounds of methamphetamine from Rob only once before the transaction that led to his arrest and that he considered himself a middleman, as he sold the drugs he bought to street-level dealers. He further acknowledged being with the informant on one occasion where the informant divided the drugs he was going to sell after mixing them with a cutting agent. Oliver confronted the informant about mixing the drugs with a cutting agent, and the informant agreed not to do it again.

Oliver further testified that he contacted clients via phone and, more often, through Facebook Messenger. He also admitted that he did not provide the Commonwealth with a "list of names" but claimed that he gave the Commonwealth all the names he could remember. He provided the name of one customer in Rockbridge County and stated that the informant and Shiflett were his primary customers in Augusta County, although he admitted that he sold drugs to "a few more" customers there.

The Commonwealth contended that Oliver did not fall within the safety valve provision but instead was "an organizer, leader, manager or supervisor of others" for the drug distribution

operation.[7] In support, the Commonwealth pointed to Oliver directing the informant's conduct during the drug transaction leading to his arrest. The Commonwealth further asserted that Oliver had failed to prove that he had provided all the information he had concerning the instant offense or other offenses connected with his drug dealing, pointing to Oliver's failure to turn over Facebook Messenger evidence and call records. The Commonwealth also emphasized that Oliver only gave three specific names of the people he distributed drugs to and that he was unable to give specific names and phone numbers of the persons from whom he received methamphetamine or "specific addresses" where he obtained methamphetamine.

The trial court found that Oliver had failed to meet the statutory requirements for invoking the safety valve provision. In support of its decision, the trial court emphasized Oliver's statement that he required the informant to transport the drugs back from Roanoke, demonstrating that Oliver played an organizational role in the distribution scheme. The trial court further found that although "he was credible," Oliver did not provide the Commonwealth with all the names of his own customers. Finally, the trial court found "that [Oliver] had a customer list in one way[,] form, shape[,] or another based on his admission involving people in Augusta County that he didn't tell the Commonwealth about."

The trial court then held a sentencing hearing, wherein Rockbridge County Sheriff's Office Investigator Phillip Flint, who had worked for the Sheriff's Office since 2008, testified that the three pounds of methamphetamine recovered from Oliver was the largest amount he had ever encountered in Rockbridge County. Oliver's uncle testified that, although Oliver suffered from drug addiction, he could be rehabilitated. His aunt, a clinical psychologist, further explained that

---

[7] The Commonwealth stipulated that Oliver "met [his] burden" on the first three prongs of the safety valve provision. *See* Code § 18.2-248(H)(4)(i)-(iii). And the Commonwealth further stipulated that Oliver "was not engaged in a continuing criminal enterprise." Code § 18.2-248(H)(4)(iv).

Oliver had distanced himself from his family but that he would benefit from mandated rehabilitation. His mother also testified that Oliver had benefitted from "forced sobriety." Oliver then testified that, while incarcerated, he began working at the jail and joined a weekly peer support group. He also explained that "forced sobriety" helped him overcome "bad habits." In allocution, Oliver apologized to those "affected by [his] actions" and stated that he accepted "full responsibility for [his] actions."

In announcing Oliver's sentence, the trial court noted that the case was "tragic" for Oliver, his family, and the "unknown victims" of Oliver's drug distribution activities. The trial court also expressed shock at the "sheer amount of drugs seized," which the trial court viewed as "requir[ing] some punishment beyond the very minimum that's required by the legislature." The trial court further acknowledged Oliver's mitigating evidence including his lack of a "serious criminal record," intelligence, and acceptance of responsibility for his actions. After weighing the evidence, the trial court sentenced Oliver to 50 years' incarceration, with 26 years suspended, resulting in a 24-year active sentence of incarceration. Oliver appealed.

## II. ANALYSIS

### A. *Standard of Review*

"We review the trial court's imposition of sentence for abuse of discretion." *Cannaday v. Commonwealth*, 75 Va. App. 707, 716 (2022). In assessing whether the trial court erroneously failed to apply the safety valve provision of Code § 18.2-248(H)(4), "we defer to the lower court's factual findings and view the facts in the light most favorable to the Commonwealth, the prevailing party below." *Id.* at 721. The trial court's ruling "is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Gerald v. Commonwealth*, 295 Va. 469, 479 (2018)).

B. *The trial court did not err by finding that the safety valve provision did not apply.*

Oliver first assigns error to the trial court's finding that he did not qualify for relief under the safety valve provision of Code § 18.2-248(H)(4). In support, he contends that the trial court erred by finding that 1) he was "an organizer, leader, manager, or supervisor of others in the offense" and 2) he had not "truthfully provided to the Commonwealth all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Code § 18.2-248(H)(4)(iv)-(v). We disagree.

When a defendant seeks sentencing relief under the safety valve provision of Code § 18.2-248(H)(4), "the onus of production and persuasion sits with the defendant." *Cannaday*, 75 Va. App. at 718.[8] The factual predicates of the safety valve provision are listed in the conjunctive, so a defendant must satisfy each predicate to qualify for relief. *See* Code § 18.2-248; *Stone v. Commonwealth*, 297 Va. 100, 101 (2019) (applying the safety valve provision contained in Code § 18.2-248(C)(4)); *Cannaday*, 75 Va. App. at 718 (applying *Stone* and noting that "subsections (C) and (H) are identically drafted").

Here, we begin and end our analysis with the fifth prong of the safety valve provision, which requires proof that

> not later than the time of the sentencing hearing, the [defendant] has truthfully provided to the Commonwealth all information and evidence the [defendant] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the [defendant] has no relevant or useful other information to provide or that the Commonwealth already is aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Code § 18.2-248(H)(4)(v). The trial court made a factual finding that Oliver had in his possession a "customer list" that he failed to disclose to the Commonwealth. Based on the record, that finding

---

[8] When *Cannaday* was decided in 2022, the safety valve provision was codified at subsection (H)(5). *See Cannaday*, 75 Va. App. at 716-17; *supra* note 2.

- 8 -

was not plainly wrong. *See Cannaday*, 75 Va. App. at 721. Oliver credibly testified that he had "a few more" customers in Augusta County, but he did not provide the court any additional corresponding names. While Oliver contends that there was "no testimony of any 'client list,'" the trial court was entitled to infer that Oliver possessed some means of obtaining and disclosing the names of his additional customers in Augusta County given that he contacted customers using Facebook Messenger.[9]

"[T]he trial court is within its discretion to disbelieve a self-serving disclosure if it appears incomplete or untruthful, and the court is entitled to consider the last-ditch nature of the effort or previous untruths into that calculus." *Hall v. Commonwealth*, 296 Va. 577, 587 (2018). Giving deference to the trial court's finding that Oliver's disclosure "appear[ed] incomplete," *id.*, we do not disturb the trial court's ruling on the application of the safety valve provision of Code § 18.2-248(H)(4).[10]

C. *The trial court did not abuse its discretion in fashioning Oliver's sentence.*

Oliver next contends that the trial court abused its discretion by sentencing him "without giving proper weight and consideration to the mitigating evidence produced in the hearing for the safety valve provision . . . and in the sentencing hearing." Citing comments the trial court made during the safety valve provision and sentencing hearings regarding the General Assembly's decision to require the mandatory minimum sentence, Oliver also suggests that the trial court erroneously concluded that it was required to sentence him to additional incarceration above and

---

[9] Even assuming without deciding that Oliver was unable to access his phone after his arrest, there is no evidence in the record that Oliver was unable to access his Facebook account and retrieve his customers' information.

[10] Because we hold that Oliver failed to satisfy the fifth prong of the safety valve provision, we need not address Oliver's contention that the trial court erred by finding that he did not satisfy the fourth prong of the safety valve provision. *See Commonwealth v. Holland*, 304 Va. 34, 49 (2025).

beyond the mandatory minimum where "[t]he only aggravating factor in the record [wa]s the amount of methamphetamine seized."[11] We disagree.

Initially, we note that "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Groves v. Commonwealth*, 50 Va. App. 57, 61 (2007) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). Oliver fails to muster "*clear* evidence" that the trial court erroneously construed Code § 18.2-248(H)(4) to *require* incarceration in addition to the mandatory minimum period of incarceration. *Id.* (emphasis added) (quoting *Yarborough*, 217 Va. at 978). Indeed, in its sentencing remarks, the trial court viewed the circumstances of the case—to include "the sheer amount of drugs seized"—as "requir[ing] some punishment beyond the very minimum." To be sure, at the safety-valve-provision hearing the court noted that Code § 18.2-248(H)(4) contained a "very severe punishment" that "jump[s] out at you," and the court further noted at the sentencing hearing that some of its sentencing discretion had been "taken away" by the required mandatory minimum. But those remarks fall far short of clear evidence that the trial court thought the statute *required* a sentence above the mandatory minimum. "[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." *Yarborough*, 217 Va. at 978.

Additionally, "[b]arring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Barrett v. Commonwealth*, 13 Va. App. 580, 584 (1992). The trial court acknowledged many of Oliver's mitigating factors, including his lack of "a serious criminal record," intelligence, and acceptance of responsibility. However, "the trial court was not obligated to find that the evidence highlighted by

---

[11] Oliver also seems to contend that the trial court's safety-valve-provision ruling infected his sentence, but having found no error in that ruling, we do not address it further.

the appellant actually mitigated his crime." *Cellucci v. Commonwealth*, 77 Va. App. 36, 52 (2023) (en banc). Here, the trial court weighed the seriousness of the offense more heavily, noting that the "sheer amount of drugs seized . . . [wa]s quite shocking." And it was "within the trial court's purview" to do so. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Thus, we hold that the trial court did not abuse its discretion in sentencing Oliver.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*